**KENTUCKY BAR ASSOCIATION,**
Movant.

v.

**Leo A. MARCUM, Respondent.**

**No. 2000–SC–0612–KB.**

Supreme Court of Kentucky.

Oct. 26, 2000.

Bruce K. Davis, Executive Director, Reid Allen Glass, Bar Counsel, Kentucky Bar Association, Frankfort, for movant.

William M. Johnson, Frankfort, for respondent.

## ORDER

The Kentucky Bar Association brought this action against Respondent, Leo A. Marcum, for alleged professional misconduct. Pursuant to SCR 3.370(6), the Kentucky Bar Association Board of Governors conducted a *de novo* review of the Trial Commissioner's dismissal of the disciplinary charges pending against Respondent and voted to impose a public reprimand upon Respondent. Respondent did not request, pursuant to SCR 3.370(8), that this Court review the Board's decision. Thus, pursuant to SCR 3.370(10), the decision of the Board is hereby adopted.

Respondent, Leo A. Marcum, was admitted to the practice of law on August 1, 1971 and practiced law in Martin County during the relevant period of this disciplinary action.

Garmon Horn owned a one quarter interest in acreage in Martin County left by his father, not in equal shares, to his three sons: Luther, James, and Garmon. At the time of the events that are the subject of

this action, Luther had died and his half interest was held by his five children. James and Garmon owned the remaining half interest.

In early 1997, a mining engineer, Rick Cornett, became interested in the timber and coal on this property and sought to enter into a mineral lease and timber contract with the owners. James and Garmon Horn signed the contract, as did Kathleen McCracken, one of Luther's children. The remaining children, however, did not enter into the agreement.

Thereafter, Cornett and James Horn approached Respondent to file an action seeking partition or sale of the property. James represented that he could speak for his brother, Garmon (who then lived in Florida), and Cornett purported to speak for Kathleen McCracken and her husband. Prior to suit being filed, Respondent never communicated in any manner with Garmon Horn or Ms. McCracken about the matter.

Suit was filed in Martin Circuit Court on September 18, 1997, and bore the style of Rick Cornett, et. al. v. Deborah Anderson, et. al., Civil Action No. 97–CI–00239 (Cornett had purchased a one-tenth interest in the property from one of Luther's heirs). The other petitioners listed were Kathleen McCracken, her husband, James Horn, Garmon Horn, and Cornett's wife. The Master Commissioner issued an order declaring that there was a rebuttable presumption that the property could not be divided and inviting the parties to present evidence to the contrary. Neither this order nor any other pleadings were forwarded to the purported petitioners Garmon Horn or Ms. McCracken. Sale from the courthouse steps was scheduled for June 25, 1998.

On June 16, 1998, Cornett and James Horn visited Respondent at his office. The purpose of the visit was to inform Respondent that James Horn did not have the money to bid on the property, as planned. Respondent then called Garmon Horn to inquire if he could fund the purchase. According to Respondent, Garmon initially said that he did not have the money and that Respondent should do whatever James advised, but Garmon called back within the hour and said he didn't know the property was to be sold or that Respondent was representing him. Garmon testified that it was not until later, when he returned to Kentucky from Florida, that he learned he was a party to a lawsuit.

Subsequently, Garmon returned to Kentucky and met with Respondent. As a result of the meeting, on July 10, 1998, Respondent moved to withdraw from the case. The sale of the land was postponed, and Garmon hired another attorney to represent him in the matter.

On October 1, 1998, Garmon filed a complaint with the KBA alleging that Respondent had improperly undertaken the representation of Garmon and Kathleen McCracken without permission and had failed to communicate with them about the representation. On February 10, 1999, the Inquiry Commission filed a 10 count charge against Respondent based upon the alleged misconduct. On April 26, 1999, Respondent filed an answer alleging that he believed in good faith in James Horn's authority to speak on behalf of his brother and that the complaint against him was the product of undue influence upon Garmon Horn by his daughter.

The Trial Commissioner dismissed the charges based upon the following findings. The Trial Commissioner found that Rick Cornett and James Horn had represented to Respondent that they were authorized to speak for Kathleen McCracken and Garmon Horn, respectively, in seeking partition/sale of the property. The Trial Commissioner also found that it was accepted practice in the circuit for one or two family members in partition suits to

represent a class of people and to be the only people having direct contact with the attorney.

The KBA appealed, arguing that the Trial Commissioner erred as a matter of law in finding that a lawyer can delegate the responsibility for communicating with and advising clients to third parties. The KBA recommended a 30 day suspension.

█ The KBA Board of Governors elected to review the case *de novo*. It subsequently found that Respondent had violated SCR 3.130–1.4(a) by failing to keep Garmon Horn and Kathleen McCracken reasonably informed about the status of their lawsuit or to promptly respond to reasonable requests for information about why the subject property was to be auctioned, and had violated SCR 3.130–1.4(b), by failing to explain to Garmon Horn and Kathleen McCracken their involvement in the lawsuit sufficiently to enable them to make informed decisions. The Board noted that although James Horn and Rick Cornett may have been authorized, as the Trial Commissioner found, to act on behalf of the other two clients, Respondent did nothing to confirm this fact and to assure that there was communication between the clients.

█ The Board also found that any accepted local practice regarding partition suits is irrelevant, and that SCR 3.140–1.4(a) and (b) are not subject to local interpretation. In so finding, the Board held that as a matter of law a lawyer is obligated to communicate directly with any purported client and to assure that the client is adequately advised.

█ Despite this professional misconduct, the Board found that Respondent did not act with improper motive in acting under the assumptions that Garmon Horn and Kathleen McCracken had authorized the action on their behalf and were being kept informed of ·the matter by James Horn and Rick Cornett.

Upon the foregoing facts an charges, it is hereby ordered that the decision of the Board of Governors be adopted. It is further ordered that,

1. Respondent, Leo A. Marcum, is hereby publicly reprimanded for his professional misconduct.

2. Respondent, Leo A. Marcum, is directed to pay costs of this action in accordance with SCR 3.450, and said sum being $3,524.80 and for which execution may issue from this Court upon finality of this Opinion and Order.

COOPER, JOHNSTONE, STUMBO, and WINTERSHEIMER, JJ., concur.

KELLER, J., files a dissenting opinion in which LAMBERT, C.J., and GRAVES, J., join.

ENTERED: October 26, 2000

/s/ Joseph E. Lambert
CHIEF JUSTICE

KELLER, Justice dissenting.

While I agree that it would have been the better practice for Marcum to communicate directly with all of his clients regarding the status of his representation of them, I disagree with the majority's conclusion that Marcum's actions warrant discipline. Undoubtedly, had Marcum communicated directly with Garmon Horn and Kathleen McCracken regarding the status of this lawsuit, the misunderstandings which led to the initiation of this disciplinary proceeding could have been avoided. I do not believe, however, that Marcum's decision to communicate directly only with the local clients most involved with the litigation violated the Rules of Professional Conduct.

The Trial Commissioner found that James Horn and Rick Cornett, the clients with whom Marcum directly communicated, had been authorized by the other

clients to, in effect, act as their agents with respect to this matter. Under circumstances where certain clients represent the interests of others, I do not believe an attorney violates SCR 1.130–1.4(a) or (b) by communicating directly with the client-agents and reasonably relying upon them to communicate with the others. The commentary following Rule 1.4 suggests that, rather than imposing a "one size fits all" rule regarding communications with clients, the extent of communications should depend on the nature of the representation:

> The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation.[1]

As the Trial Commissioner found that Marcum reasonably relied upon true representations by James Horn and Rick Cornett that they were authorized to make litigation decisions on behalf of the other clients, I believe Marcum's decision to communicate directly with James Horn and Rick Cornett and expect that they would convey the information to the passive clients was consistent with the character of this representation.

Further, I believe the arrangement between the clients in this partition lawsuit more closely resembles a group arrangement than multiple, independent, decision-maker clients, and we may glean guidance from the commentary regarding communications with organizational or group clients:

> When the client is an organization or group, it is often impossible or inappropriate to inform every one of its members about its legal affairs; ordinarily, the lawyer should address communications to the appropriate officials of the organization.[2]

Pursuant to SCR 3 370(9), I would take review of the decision of the Kentucky Bar Association Board of Governors and dismiss the charges against Marcum.

LAMBERT, C.J., and GRAVES, J., join this dissent.